IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang

Civil Action No. 22-cv-02376-NYW

B.A.Y.,[1]

    Plaintiff,

v.

KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration,

    Defendant.

## MEMORANDUM OPINION AND ORDER

This civil action arises under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401–33, for review of the final decision of the Commissioner of the Social Security Administration ("Commissioner" or "Defendant") denying the application for Disability Insurance Benefits ("DIB") filed by Plaintiff B.A.Y. ("Plaintiff"). After carefully considering the Parties' briefing, the Administrative Record, and the applicable case law, this Court respectfully **AFFIRMS** the Commissioner's decision.

## BACKGROUND

Plaintiff, born September 2, 1977, applied to the Social Security Administration for DIB in 2019, alleging that he became disabled on February 5, 2017. [Doc. 9-3 at 94, 97; Doc. 9-5 at

---

[1] The Local Rules for this District provide that "[a]n order resolving a social security appeal on the merits shall identify the plaintiff by initials only." D.C.COLO.LAPR 5.2(b).

1

352–54].² After a telephonic hearing, [Doc. 9-2 at 41–71], Administrative Law Judge Debra L. Boudreau ("ALJ" or "ALJ Boudreau") denied Plaintiff's claim on December 29, 2020, [Doc. 9-3 at 125–40]. The Appeals Council granted Plaintiff's request for review and remanded the matter to the ALJ to consider a particular medical opinion. [*Id.* at 146–48]. At another telephonic hearing on March 22, 2022, the ALJ heard testimony from Plaintiff and Vocational Expert Jammie Massey ("VE"). [Doc. 9-2 at 72–93].

***The March 2022 Hearing.*** As relevant here, Plaintiff's date last insured ("DLI") was June 30, 2019, meaning Plaintiff needed to show disability on or prior to that date to obtain DIB.³ [*Id.* at 12]. Based on the Plaintiff's DLI having passed before the first hearing, his then-counsel declined to make opening remarks at the second hearing in addition to those made at the initial hearing. *See* [*id.* at 78 (prior counsel noting that "with the date last insured nothing should've changed with the passage of time")]; *see also* [*id.* at 46–48 (opening remarks at first hearing)]. The ALJ invited Plaintiff to supplement his testimony from the first hearing, with a focus on the time period at issue, and Plaintiff testified about ongoing medical treatment for injuries to his back and neck. [*Id.* at 78–80]. Plaintiff also discussed his increased reliance on his sons to handle household matters and make up for his memory issues. [*Id.* at 80–81]. Plaintiff further testified about a recent shoulder surgery, as well as the difficulties he encountered due to carpal tunnel and cubital tunnel syndrome in his hands, suggesting that he first experienced the underlying conditions in 2009. [*Id.* at 82–87].

---

² When citing to the Administrative Record, [Doc. 9], the Court utilizes the docket number assigned by the CM/ECF system and the page number associated with the Administrative Record, found in the bottom right-hand corner of the page. For all other documents, the Court cites to the document and page number generated by the CM/ECF system.

³ Plaintiff does not appear to challenge the ALJ's calculation of the DLI. *See generally* [Doc. 15].

2

The ALJ then took the testimony of the VE. The VE evaluated Plaintiff's past employment as an infantryman and armored car driver as very heavy work, and medium work, respectively. [*Id.* at 87–88]. Next, the ALJ posed a hypothetical to the VE, postulating an individual of the same age as Plaintiff on his DLI (41 years old), with a similar background, who could occasionally lift or carry 20 pounds; could frequently lift or carry 10 pounds; could stand/walk for six hours in an eight-hour day; could sit for six hours in an eight-hour day; and could occasionally climb, balance, stoop, kneel, crouch, and crawl. [*Id.* at 88]. The VE testified that such a person would be unable to perform Plaintiff's prior occupations, but could still engage in "light work" that existed in great numbers in the national economy, including as a routing clerk, a parking lot attendant, or an office helper, consistent with the Dictionary of Occupational Titles ("DOT"). [*Id.* at 88–89]. Plaintiff's counsel posed a more restrictive hypothetical to which the VE responded, relying on the DOT as well as her experience as a certified rehabilitation counselor, by suggesting that the hypothetical individual would be unable to find any work in the national economy. [*Id.* at 89–92].

***The Hearing Decision.*** On April 5, 2022, the ALJ issued her decision, finding that Plaintiff was not disabled on or before the DLI, and was not entitled to DIB ("Hearing Decision"). *See* [*id.* at 10–24].[4] The ALJ began by reasoning that Plaintiff's DLI was June 30, 2019, thus narrowing her review to the period between the DLI and the alleged disability onset date of February 5, 2017. *See* [*id.* at 12]. The ALJ next found that Plaintiff did not engage in substantial gainful activity during the period in question and had the following severe impairments: degenerative disc disease of the cervical and lumbar spine, osteoarthritis of the right knee, and obesity. [*Id.* at 12–13]. In doing so, the ALJ deemed non-severe (1) residuals of a 2009 traumatic

---

[4] In her decision, the ALJ noted that she declined to consider an untimely letter submitted by Plaintiff. *See* [Doc. 9-2 at 10]. The admission of the letter is not at issue in this case. *See generally* [Doc. 15].

brain injury ("TBI") because "the record [did] not establish residuals causing more than a minimal effect on [Plaintiff's] ability to perform basic work-related activities on an ongoing basis," [*id.* at 13]; (2) sensorineural hearing loss and tinnitus because "audiology records noted [Plaintiff] had excellent speech recognition bilaterally, and the record [did] not establish that either hearing loss or tinnitus resulted in more than minimal workplace limitations," including during Plaintiff's prior employment as an armored car driver, [*id.* (citation omitted)]; (3) sleep apnea because the record failed to "establish any daytime sleepiness or other functional limitations," [*id.*]; (4) depression, anxiety, and post-traumatic stress disorder because, even in combination, they "did not cause more than minimal limitation in [Plaintiff's] ability to perform basic mental work activities" based on the four broad areas of mental functioning outlined in the disability regulations ("Regulations"), [*id.* at 13–15]. The ALJ explained that Plaintiff's aforementioned severe impairments did not result in an automatic finding of disability under the Regulations. [*Id.* at 16].

The ALJ then determined Plaintiff's residual functional capacity ("RFC")—in other words, his remaining ability to engage in work after accounting for all severe and non-severe conditions:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, [Plaintiff] had the residual functional capacity to perform light work as defined in 20 CFR [§] 404.1567(b) except [Plaintiff] can occasionally lift and/or carry about 20 pounds, [and] can frequently lift and/or carry about 10 pounds. He can stand and/or walk for about 6 hours out of an 8-hour workday. He can sit for about 6 hours out of an 8-hour workday. He can occasionally climb, stoop, kneel, crouch, and crawl; but only occasionally balance.

[*Id.* at 16]. The ALJ explained that, in making that RFC finding, she "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." [*Id.* at 16–17]. To that end, the ALJ discussed at length why certain other non-severe impairments alleged by Plaintiff did not affect the RFC, and why some medical evaluations received more weight than others in her analysis. *See* [*id.* at 17–22]. Relying on the VE's testimony at the second hearing, and applying the specified RFC, the ALJ

4

then found that Plaintiff was unable to perform his past relevant work as an infantryman and armored car driver through the DLI, but that Plaintiff could nonetheless perform other jobs that existed in significant numbers in the national economy. [*Id.* at 22–23]. The ALJ therefore concluded that Plaintiff was not under a disability between the alleged disability onset date and the DLI. [*Id.* at 23–24].

*Administrative and Judicial Review.* Plaintiff filed a Request for Review of the Hearing Decision, which the Appeals Council denied on May 18, 2022. [*Id.* at 1–5]. The Appeals Council determined that Plaintiff's reasons for disagreeing with the ALJ "[did] not provide a basis for changing" the ALJ's decision. [*Id.* at 1]. That rendered the denial of benefits the final decision of the Commissioner. On August 11, 2022, the Appeals Council extended Plaintiff's deadline to file a civil action challenging the denial of DIB. [*Id.* at 31]. Plaintiff sought judicial review in the United States District Court for the District of Colorado on August 14, 2022, invoking this Court's jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c)(3).[5] *See* [Doc. 1]. Because this matter is ripe for resolution, the Court considers the Parties' arguments below.

## LEGAL STANDARD

An individual is eligible for DIB under the Act if they are insured, have not attained retirement age, have filed an application for DIB, and have a disability as defined in the Act. *See* 42 U.S.C. § 423(a)(1). The disability claimant must prove they were disabled prior to the DLI. *See Flaherty v. Astrue*, 515 F.3d 1067, 1069 (10th Cir. 2007).

---

[5] Plaintiff filed his Complaint for Judicial Review of Social Security Decision, [Doc. 1], pro se. Following an order authorizing the appointment of counsel, [Doc. 13], counsel entered an appearance, [Doc. 14], and briefed Plaintiff's appeal.

Under the Act, an individual is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 423(d)(2)(A). The disability must last or be expected to last for at least 12 months. *Id.* § 423(d)(1)(A). When a claimant has one or more physical or mental impairments, the Commissioner must consider their combined effects in making a disability determination. *Id.* § 423(d)(2)(B).

The Regulations set out a five-step evaluation process to determine whether a claimant is disabled, based on assessing:

1. Whether the claimant has engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment or combination of impairments;

3. Whether the claimant has an impairment that meets or medically equals any listing found at Title 20, Chapter III, Part 404, Subpart P, Appendix 1;

4. Whether the claimant has the RFC to perform her past relevant work; and

5. Whether the claimant can perform work that exists in the national economy, considering the claimant's RFC, age, education, and work experience.

*See* 20 C.F.R. § 404.1520(a)(4)(i)–(v); *see also Williams v. Bowen*, 844 F.2d 748, 750–52 (10th Cir. 1988) (describing five steps in detail). "The claimant bears the burden of proof through step four of the analysis," and the Commissioner bears the burden of proof at step five. *Nielson v. Sullivan*, 992 F.2d 1118, 1120 (10th Cir. 1993). If an ALJ determines "at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quotation omitted).

In reviewing the Commissioner's decision, the Court limits its review to considering whether the ALJ supported her findings by substantial evidence and applied the correct legal standards. *See Flaherty*, 515 F.3d at 1070. The Court may not reweigh evidence nor substitute its judgment for the Commissioner's, but failure to apply proper legal standards may be sufficient grounds for reversal independent of substantial evidence analysis. *See Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty*, 515 F.3d at 1070 (quotation omitted). Evidence is not substantial if it is overwhelmed by the record or is only a conclusion. *Williams*, 844 F.2d at 750. The Court may not replace the Commissioner's decision between two plausible and conflicting views, even if the Court would find differently in conducting de novo review. *Lax*, 489 F.3d at 1084. However, the Court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005).

## ANALYSIS

Plaintiff identifies two related issues in the ALJ's decision which he argues warrant remand or an outright award of benefits.[6] [Doc. 15 at 6]. First, he argues that the ALJ failed to determine his RFC correctly. Second and relatedly, he contends that the Commissioner failed to meet her burden at Step Five because the ALJ relied on the wrong RFC.

---

[6] Because the Court affirms the Commissioner's final decision, the Court need not address the issue whether the proper remedy, upon reversal, would be remand or an award of benefits. *See* [Doc. 15 at 38; Doc. 18 at 22 n.5].

**I.     RFC Determination**

    **A.     Legal Framework**

In formulating a claimant's RFC, the ALJ must consider the combined effect of all the claimant's medically determinable impairments, including the severe and non-severe. *See Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013); *Ray v. Colvin*, 657 F. App'x 733, 734 (10th Cir. 2016). A claimant's RFC is the most work the claimant can perform, not the least. *See* 20 C.F.R. § 404.1545(a)(1). "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Hendron*, 767 F.3d at 954 (quotation omitted). The ALJ need not identify "affirmative, medical evidence on the record as to each requirement of an exertional work level before an ALJ can determine RFC within that category," and the Court will uphold the RFC assessment if it is consistent with the record and supported by substantial evidence. *See Howard v. Barnhart*, 379 F.3d 945, 947, 949 (10th Cir. 2004).

In assessing a claimant's RFC, the ALJ must address the record's medical source opinions. *See Vigil v. Colvin*, 805 F.3d 1199, 1201–02 (10th Cir. 2015). For applications filed after March 27, 2017, such as Plaintiff's, the Regulations provide that an ALJ must evaluate the persuasiveness of a medical opinion using the following factors: (1) supportability; (2) consistency; (3) the provider's relationship with the claimant, including the length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, and extent of the treatment relationship, and whether the treatment relationship is an examining relationship; (4) the medical source's area of specialization; and (5) other factors "tending to support or contradict a medical opinion or prior administrative medical finding." *Pearson v. Saul*, No. 20-cv-01808-NRN, 2021 WL 2549214, at *3 (D. Colo. June 22, 2021); *see also* 20 C.F.R. § 404.1520c(c).

Supportability and consistency "are the most important factors" in determining the persuasiveness of a medical opinion. 20 C.F.R. § 404.1520c(b)(2). While the ALJ must explain her approach to these two factors, she need not expound on the remaining three factors unless she finds that two or more non-identical medical opinions are equally well-supported and consistent with the record. *Id.* § 404.1520c(b)(2)–(3); *see also Vellone v. Saul*, 1:20-cv-00261 (RA) (KHP), 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021). "[A] supportability inquiry examines how well a medical source supported and explained their opinion." *S.P. v. Kijakazi*, No. 20-cv-00717-CMA, 2021 WL 6197283, at *5 (D. Colo. Dec. 30, 2021) (citing *Vellone*, 2021 WL 319354, at *6); *see also* 20 C.F.R. § 404.1520c(c)(1). "Consistency, on the other hand, is 'an all-encompassing inquiry' that focuses on how well a medical source opinion is supported, or not supported, by the entire record." *S.P.*, 2021 WL 6197283, at *5 (quoting *Vellone*, 2021 WL 319354, at *6); *see also* 20 C.F.R. § 404.1520c(c)(2). At bottom, the ALJ must "consider all evidence in [the] case record when [making] a determination or decision whether [the claimant] is disabled." 20 C.F.R. § 404.1520(a)(3). This means that in addition to discussing supporting evidence, the ALJ must "discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Mestas v. Kijakazi*, No. 20-cv-01865-REB, 2021 WL 3030224, at *3 (D. Colo. July 19, 2021) (quoting *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996)).

When analyzing a claimant's statements of pain and symptoms, courts must consider (1) whether the claimant established a pain-producing impairment with objective medical evidence; (2) if so, whether there is a loose nexus between the proven impairment and the claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, objective and subjective, the claimant's pain is in fact disabling. *See Wilson v. Astrue*, 602 F.3d

9

1136, 1144 (10th Cir. 2010).  In determining whether a claimant's subjective complaints of pain are credible, the Regulations provide that an ALJ may consider the following factors:

(i) daily activities;

(ii) the location, duration, frequency, and intensity of pain or other symptoms;

(iii) precipitating and aggravating factors;

(iv) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms;

(v) treatment, other than medication, received for relief of pain or other symptoms;

(vi) any measures used to relieve pain or other symptoms; and

(vii) other factors concerning functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3).  Moreover, this Court is guided by the principle that "[c]redibility determinations are peculiarly the province of the finder of fact, and [the Court] will not upset such determinations when supported by substantial evidence." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted).  In addition, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Id.* (alteration in original and quotation omitted).  "Inconsistencies are a reasonable basis upon which to find a claimant not credible." *Marchand v. Colvin*, No. 14-cv-02533-RM, 2016 WL 1089740, at *8 (D. Colo. Mar. 21, 2016) (citing *Wilson*, 602 F.3d at 1146).  Under Tenth Circuit precedent, "[t]he only question this court must answer is whether the ALJ's [credibility] determination . . . was closely and affirmatively linked to evidence that a reasonable mind might accept as adequate to support that conclusion." *Stokes v. Astrue*, 274 F. App'x 675, 686 (10th Cir. 2008).

10

B.   Discussion

Plaintiff argues that the ALJ's "light work" RFC, *see* [Doc. 9-2 at 16], "is untenable, [and] not supported by substantial evidence, having omitted" Plaintiff's (1) left knee osteoarthritis, (2) bilateral hip impairment, (3) bilateral shoulder impairment, (4) epicondylitis, and (5) TBI effects; as well having (6) improperly evaluated Plaintiff's pain. [Doc. 15 at 27–35].

*Left knee osteoarthritis.*   In assessing Plaintiff's RFC, the ALJ explained that she "considered the Claimant's knee issues," referencing magnetic resonance imaging ("MRI") of Plaintiff's left knee done in 2017 that showed mild medial compartment narrowing, mild spurring, trace joint effusion, small focal chondromalacia, and probable mild suprapatellar quadriceps fat pad impingement. [Doc. 9-2 at 18]. The ALJ also noted that the record failed to "establish significant treatment for either knee during the period at issue." [*Id.*]. Before this Court, Plaintiff appears to suggest that additional issues with his left knee should have impacted the RFC to a greater degree. *See* [Doc. 15 at 27–29]. However, his specific arguments are underdeveloped and do not convince the Court that the ALJ reversibly erred. For example, Plaintiff begins by referencing a 2011 Veterans Administration ("VA") evaluation of his knee, but admits it does not bind the ALJ. *See* [*id.* at 27]; *see also* 20 C.F.R. § 404.1520b(c)(1). Next, Plaintiff recites a series of diagnostic test results respecting his left knee, culminating in the very MRI which the ALJ discussed in determining Plaintiff's RFC. *See* [Doc. 15 at 28]. Then, Plaintiff argues that the medical evaluations by Dr. Margaret MacDonald ("Dr. MacDonald") and Nurse Jennifer Heery ("Nurse Heery") would support a more restrictive RFC based on his knee issues. [*Id.* at 28–29]. But even Plaintiff recognizes that the ALJ discussed in detail why she discounted those evaluations, and he fails to develop an argument that the ALJ was wrong in doing so. [*Id.* at 29]. The Reply does not improve things, as Plaintiff poses irrelevant rhetorical questions about a

11

different medical evaluation which the ALJ deemed consistent with findings she already made. *See* [Doc. 19 at 3]; *see also* [Doc. 9-2 at 22].

***Bilateral hip impairment.*** The ALJ did not discuss any hip impairment in formulating Plaintiff's RFC. *See* [*id.* at 16–22]. In his briefing, Plaintiff references imaging done in September 2016 that showed potential hip damage, and a 2020 physical therapist's note discussing decreased range of motion in Plaintiff's hip, supposedly "indicating a continuous impairment not taken into consideration." [Doc. 15 at 29]. The Commissioner responds, in part, that Plaintiff's evidence is outside the relevant period, as the imaging predates the alleged disability onset date, and the physical therapist's note postdates the DLI. *See* [Doc. 18 at 13]. The Court agrees with the Commissioner that Plaintiff's evidence "does not show that he had work-related hip limitations during the relevant time-period for a period of twelve months" that were not factored into the RFC. [*Id.*]; *see also Coleman v. Chater*, 58 F.3d 577, 579 (10th Cir. 1995) ("[A] retrospective diagnosis without evidence of actual disability is insufficient." (quotation omitted)). Notably, the ALJ relied on a medical evaluation finding that Plaintiff had no mobility limitations in early 2017, *see* [Doc. 9-2 at 18], which defeats Plaintiff's suggestion that the ALJ lacked support for an RFC that did not account for a continuous hip impairment.

***Bilateral shoulder impairment.*** Plaintiff contends that the ALJ "did not address Plaintiff's shoulder impairments that he testified limited his reaching to 2–3 lbs." [Doc. 15 at 30]. However, the Commissioner is correct that the ALJ explicitly discussed this aspect of Plaintiff's testimony when comparing Plaintiff's symptoms with the medical evidence in the record. *See* [Doc. 9-2 at 17 ("[Plaintiff] could . . . lift 2–3 pounds while reaching.")]. And the ALJ explained why she assigned minimal weight to Nurse Heery's evaluation of Plaintiff's shoulders, which Plaintiff references in his briefing. *See* [*id.* at 21–22]. Next, based on "an absence of reported shoulder

12

trauma" between his DLI and a March 2020 MRI showing a shoulder tear, which led to May 2021 shoulder surgery, Plaintiff suggests that "the ALJ should have developed the record regarding left shoulder impairment prior to the DLI." [Doc. 15 at 31]. But, setting aside that this argument relies upon an absence of trauma during the relevant period, Plaintiff was represented (by different counsel) before the ALJ and, "in a counseled case, the ALJ may ordinarily require counsel to identify the issue or issues requiring further development." *Cowan v. Astrue*, 552 F.3d 1182, 1188 (10th Cir. 2008) (quotation omitted). The Court discerns no error in the extent to which the ALJ accounted for any shoulder impairment.

*Epicondylitis.* Plaintiff cites to medical records from before the alleged disability onset date, and from after the DLI, to demonstrate issues related to his elbow, such as epicondylitis, which he alleges the ALJ erred in not addressing. *See* [Doc. 15 at 31–32]. However, setting aside the timing of the records Plaintiff relies upon, *see, e.g.*, [Doc. 9-8 at 1184 (Plaintiff reporting in September 2020 that "he has started to have bilateral elbow pain")], the Court notes that the ALJ made particularized evidence-based findings about Plaintiff's ability to engage in activity with his arms. *See* [Doc. 9-2 at 17]. The ALJ also relied on a function report in which Plaintiff "did not report problems in reaching," [*id.* at 20], and Plaintiff does not explain how doing so constituted reversible error. The Court concludes that the ALJ adequately considered Plaintiff's manual limitations in determining his RFC.

*TBI effects.* In the Hearing Decision, the ALJ found that several of Plaintiff's non-severe impairments—TBI residuals, sensorineural hearing loss, tinnitus, sleep apnea, depressive disorder, and anxiety disorder—"[did] not cause any additional limitations" on his RFC. [*Id.* at 19]; *see also* [*id.* (noting that "a residual functional capacity is not the least an individual can do despite his limitations or restrictions, but the most")]. In his brief, Plaintiff refers the Court to a prior

13

administrative law judge's ("Prior ALJ") findings about the severity of his TBI residuals in 2013, suggesting they should have guided ALJ Boudreau in 2022. *See* [Doc. 15 at 32–33]. But Plaintiff himself recognizes how those findings conflict with the far more recent assessment of Dr. Valerie Besses ("Dr. Besses") from immediately after the DLI,[7] [*id.* at 32], and thus cannot convince the Court that ALJ Boudreau lacked substantial evidence for her conclusions. *See Lax*, 489 F.3d at 1084 ("The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." (quotation omitted)). Besides, prior administrative findings do not necessarily control determinations about different, unadjudicated time periods, *see Gonzales v. Colvin*, 515 F. App'x 716, 721 (10th Cir. 2013), and the Prior ALJ did not find Plaintiff disabled, [Doc. 9-3 at 169].

Plaintiff also argues that the ALJ's "requirement of objective findings of neurological dysfunction is asking too much based on the available evidence." [Doc. 15 at 32–33]. He submits that the ALJ's conclusion that the record lacked objective evidence to "corroborate" his alleged residual injuries constituted a medical opinion beyond the ALJ's expertise. *See* [*id.* at 33]. However, the Commissioner is correct that these statements, made in the course of explaining why certain medical opinions were unpersuasive, were consistent with the Regulations, which prize "supportability" as a critical factor in evaluating medical opinions. *See* 20 C.F.R. § 404.1520c(b)(2).

***Pain evaluation.*** Last, the ALJ considered Plaintiff's reports of "constant pain limiting his ability to perform both exertional and nonexertional activities," but concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not

---

[7] The ALJ explained that, "[w]hile Dr. Besses examined [Plaintiff] about 16 days after the date last insured, the record does not establish significant changes between the date last insured and Dr. Besses' examination." [Doc. 9-2 at 14].

14

entirely consistent with the medical evidence and other evidence in the record." [Doc. 9-2 at 17]. On review, Plaintiff suggests that the Prior ALJ's determinations about his pain levels are "the law of the case." [Doc. 15 at 34]. But the Commissioner is correct that this matter involves different evidence and a different, unadjudicated time period. *See* [Doc. 18 at 20]; *see also Gonzales*, 515 F. App'x at 721. Moreover, the case cited by Plaintiff is readily distinguishable in that it involved a prior finding of disability based on a condition that the administrative decision under review had ignored. *See Adamson v. Astrue*, No. 11-cv-01267-REB, 2012 WL 4378120, at *3–4 (D. Colo. Sept. 25, 2012). Here, the Prior ALJ adjudicated Plaintiff not disabled, [Doc. 9-3 at 169], and ALJ Boudreau explained how new evidence, including Plaintiff's daily activities, informed her analysis, [Doc. 9-2 at 17]. Plaintiff's argument that the ALJ improperly relied on his daily activities to determine the RFC, [Doc. 15 at 35], ignores the various medical opinions the ALJ also considered, as well as the regulatory framework and the Court's deferential posture of review. *See, e.g.*, 20 C.F.R. §§ 404.1529(c)(3)(i); *see also Casias v. Sec'y of Health & Hum. Servs.*, 933 F.2d 799, 801 (10th Cir. 1991) ("We defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess witness credibility."). Essentially, Plaintiff invites the Court to reweigh the evidence before the ALJ, which this Court declines to do. *Lax*, 489 F.3d at 1084. The Court therefore respectfully rejects Plaintiff's arguments charging the ALJ's assessment of his RFC with error.

## II.    Step Five Analysis

Plaintiff's second argument depends on his first. Specifically, he contends that the ALJ's allegedly improper RFC determination "infected" her analysis at Step Five because she relied on VE testimony predicated on a "deficient hypothetical" that did not cover all Plaintiff's impairments. [Doc. 15 at 36]. Echoing his arguments about the RFC, Plaintiff suggests that a sufficient hypothetical would have encompassed his (1) left knee osteoarthritis; (2) bilateral hip

15

impairment; (3) bilateral shoulder impairment; (4) epicondylitis; (5) TBI sequelae, including impaired ability to manage ordinary work stressors, headaches exacerbated by noise and light, tinnitus, hearing loss, short temper, depression, irritability, hypervigilance, emotional detachment, low motivation, anxiety, issues with crowds, and issues interacting with members of the public and co-workers; (6) need for a sit-stand option; and (7) need to rest as needed. *See* [*id.* at 36–37]. Defendant responds that the ALJ's findings at Step Five were supported by substantial evidence "because the ALJ's hypothetical to the vocational expert included all of the RFC limitations she determined that plaintiff experienced," and she did not need to "address unsupported limitations." [Doc. 18 at 21–22].

The Court agrees with Defendant that Plaintiff's argument with respect to Step Five essentially "re-hashes his argument that the ALJ should have found him more limited." [*Id.* at 21]. That is because the ALJ's hypothetical to the vocational expert was consistent with the ALJ's RFC determination. *Compare* [Doc. 9-2 at 16] *with* [*id.* at 88]. Having rejected the argument that the RFC found by the ALJ was not supported by substantial evidence above, the Court accordingly rejects Plaintiff's argument about Step Five. The Commissioner met her burden, and Plaintiff provides no independent argument for remand.[8]

---

[8] In discussing TBI residual injuries in his Reply, Plaintiff states that "[t]he rejection or ignoring of the impairments at issue here on the basis of lack of treatment by the VA essentially shifted the burden at step five to the Plaintiff." [Doc. 19 at 6]. Setting aside how Plaintiff only minimally develops this argument, which first arises in the Reply, the Court notes that the argument does not actually bear on the ALJ's Step Five analysis.

## CONCLUSION

For the reasons stated herein, the Court **AFFIRMS** the Commissioner's final decision.

DATED:  August 4, 2023

BY THE COURT:

_____
Nina Y. Wang
United States District Judge